IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILDCAT CAPITAL ENTERPRISES, LLC, assignee and successor in interest to PNC Equipment Finance, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 11-CV-04922 |
| v. | ) ) ) | |
| GERALD H. WEBER JR., RONALD E. SWENSON, RUBLOFF DEVELOPMENT GROUP, INC., *et al*. | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT**
**SANDOR JACOBSON'S (AS RECEIVER) JOINT RULE 24 MOTION TO INTERVENE**

Sandor Mark Jacobson, not individually, but solely as the court appointed receiver of 3055 183rd Street, Homewood, Illinois 60430 (the "Receiver"), by and through his counsel, submits this Memorandum of Law in support of his Motion to Intervene (the "Motion") and states as follows:

**Introduction**

As more fully set forth below, the Receiver is a judgment creditor of defendant Rubloff Development Group, Inc. ("Rubloff").[1] The Receiver has initiated post-judgment enforcement proceedings (collectively, the "State Court Citation Proceedings") against Rubloff in an effort to collect on his judgment. These collection efforts, however, have been thus far thwarted by

---

[1] First Midwest Bank ("First Midwest"), the secured creditor who sought appointment of the Receiver in the underlying state court foreclosure action, has separately sought to intervene in this case (the "First Midwest Motion" and "First Midwest Memorandum". [Dkt. Nos. 104 and 105.] First Midwest has obtained a judgment against defendants Gerald Weber ("Weber"), and Ronald Swenson ("Swenson" and collectively with Rubloff and Weber, the "Judgment Creditors").

alleged judgment creditor Wildcat Capital Enterprises, LLC ("Wildcat"), the assignee of the $25 million dollar judgment [Dkt. No. 69] (the "PNC Judgment") entered in this case in favor of the original plaintiff, PNC Equipment Finance, LLC ("PNC"), against the Judgment Debtors.

Wildcat asserts a superior lien that continues in perpetuity based on an agreed order entered by this Court (the "Agreed Order"). [Dkt. No. 93]. As more fully set forth below, however, Wildcat is not a legitimate judgment creditor because it was formed by the Judgment Debtors to wrongfully shield Rubloff and the other Judgment Debtors from their other legitimate creditors. In summary, the Judgment Debtors own and/or control Wildcat[2] and use the purported citation lien granted by the Agreed Order to ward off other competing creditors by asserting such creditors are so far behind a $25 million dollar judgment, why bother? Wildcat, though, engages in little to no effort to collect on the PNC Judgment and only asserts its rights when a legitimate creditor surfaces. And any efforts Wildcat does engage in, simply result in the funds collected being round tripped back to the Judgment Debtors via related entities or their family members. This ruse must end.

In his Motion, the Receiver moves to intervene so that he may file a subsequent motion to vacate the Agreed Order pursuant to Rule 60 of the Federal Rules of Civil Procedure or, in the alternative, seek an order terminating Wildcat's asserted citation lien or limiting the scope of same. As set forth below, the Receiver can easily satisfy the four factors justifying the sought intervention. As to the first factor, the Receiver has timely moved to intervene by filing the Motion soon after Wildcat successfully obstructed the State Court Citation Proceedings and after the Receiver obtained authority from the judge presiding over the receivership. Second, the Receiver has a lien interest in Rubloff's assets, thus satisfying the second factor. Third, the

---

[2] Upon information and belief, neither Wildcat nor the Judgment Debtors disclosed to this Court the identity of interests between Wildcat and the Judgment Debtors when they sought entry of the Agreed Order.

2

Receiver's ability to collect on his judgment against Rubloff is contingent on the disposition of the enforceability of Wildcat's allegedly timeless citation lien imposed by the Agreed Order. Lastly, because Wildcat and the Judgment Debtors are one and the same, the Receiver's interests are not adequately represented in this action unless the sought intervention is allowed. Therefore, this Court should grant the Motion and allow the Receiver to intervene so that he may seek to protect his interests.

**Factual Background**

i. **The PNC Judgment is Entered; Citations Issue; PNC Assigns to Wildcat.**

This Court entered the $25 million PNC Judgment against the Judgment Debtors on March 13, 2012 [Dkt. No. 69]. Thereafter, in September 2012 and September 2013, PNC issued citations to the Judgment Debtors in an effort to collect on the PNC Judgment. [Dkt. Nos. 82, 83, 84].

On November 11, 2013, PNC filed a Notice of Assignment of Judgment with this Court, providing that all right, title and interest in the PNC Judgment had been assigned and transferred to Wildcat. [Dkt. No. 85]. On December 26, 2013, Wildcat caused citations to the Judgment Debtors to be issued (the "<u>Wildcat Citations</u>") purporting to continue the post-judgment enforcement efforts initiated by PNC. [Dkt. No. 91].

ii. **This Court Enters the Agreed Order.**

On March 25, 2014, this Court entered the Agreed Order upon its joint submission by counsel for Wildcat and the Judgment Debtors. [Dkt. No. 93]. A copy of the Agreed Order is attached hereto as **<u>Exhibit A</u>**. On its face, the Agreed Order appears to be a relatively standard turnover order mandating that the Judgment Debtors transfer certain of their assets to Wildcat in partial satisfaction of the PNC Judgment. But, as set forth, the Agreed Order serves as the lynchpin of the strategy designed by Wildcat and the Judgment Debtors to shield and obstruct the

3

Judgment Debtors' creditors' ability to reach the Judgment Debtors' assets. The last clause of the Agreed Order is the cornerstone of this strategy: "**The [Wildcat] Citations shall remain in full force and effect pending further Order of Court**." Pursuant to this clause, the citation liens in favor of Wildcat allegedly encumbering *all* of Rubloff's and the rest of the Judgment Debtors' assets arising under the Wildcat Citations purportedly remain in place indefinitely.

Of course, when the Agreed Order was jointly presented to this Court for entry by Wildcat and the Judgment Debtors, upon information and belief, they did not advise this Court that Wildcat was created and controlled by the Judgment Debtors to act as a shield against the Judgment Debtors' legitimate creditors.

### iii. Wildcat is the Judgment Debtors.

A deeper look into the facts demonstrates that the Judgment Debtors created and controlled Wildcat to obtain the PNC Judgment, have this Court enter the Agreed Order without benefit of all of the facts, and, in turn, use the Agreed Order to evade their liabilities to their creditors. Evidence of the cozy relationship between Wildcat and the Judgment Debtors is readily available and has been obtained by the Receiver through discovery issued in the State Court Citation Proceedings:

a. **Wildcat's Direct Payments To or For the Benefit of the Judgment Debtors**. On October 14, 2014, Wildcat paid Rubloff $16,000.00. A copy of the check from Wildcat to Rubloff is attached hereto as **Exhibit B**. Wildcat is also ***paying*** the Judgment Debtors' legal fees. Holmstron & Kennedy, P.C. represents Swenson and Weber in the State Court Citation Proceedings[3] and McGreevy Williams, P.C. represented the Judgment Debtors in this case and continues to

---

[3] Attached hereto as **Exhibit C**, is a filing from the State Court Citation Proceedings evidencing the Holmstrom firm's representation of Swenson and Weber.

4

represent Rubloff in the State Court Citation Proceedings.[4] In fact, Donald Q. Manning of the McGreevy firm signed the Agreed Order. Yet, Wildcat has made payments totaling at least $194,521.33 to the Holmstron firm and $28,453.13 to the McGreevy firm. Copies of checks evidencing these payments are attached hereto as group **Exhibit E**. Lastly, Wildcat has made payments to Patti Weber and JoAnn Swenson, spouses of Weber and Swenson, $18,999.58 each. Copies of checks evidencing these payments are attached hereto as group **Exhibit F**.

b. **Same Signatories**. Rubloff and Wildcat have the same signatories on most of their checks, Mrs. Dawn Bradley. Copies of Rubloff and Wildcat checks are attached hereto as **Exhibit G**. *See also*, Exhibits E and F.

c. **Same Executives/Insiders**. Wildcat's manager is Zachary R. Knutson ("Knutson"), as set forth in the Illinois Secretary of State's online records attached hereto as **Exhibit H**. Knutson is a longtime Rubloff employee and insider. As set forth on Knutson's LinkedIn profile (attached as **Exhibit I**), Knutson was Rubloff's COO from June 2009 to September 2012 and its Vice President of Development from May 2007 to June 2009. Further, Knutson is now the manager of North Rock Real Estate, LLC ("North Rock"), per the Illinois Secretary of State webpage attached hereto as **Exhibit J**. As set forth in the Secretary of State's database, North Rock is the successor to Rubloff Equities, LLC, another Rubloff affiliate. Quite simply, Wildcat is managed and controlled by a Rubloff executive and insider.

---

[4] Attached hereto as **Exhibit D**, is an Order from the State Court Citation Proceedings evidencing the McGreevy firm's representation of Rubloff and related entity Rubloff K-M, LLC.

      d.    **Shared Office/Registered Agents**. Wildcat, Rubloff, and North Rock all operate out of the same office. Pursuant to Rubloff's letterhead (attached as **Exhibit K**) Wildcat's checks (*See* **Exhibit E**), and North Rock's Secretary of State page (*See* Exhibit J), all three of these entities operate out of <u>6723 Weaver Road, Suite 108, Rockford, Illinois, 61114</u>. Further, Rubloff's Secretary of State webpage (attached as **Exhibit L**) states that Weber is its president and its address is <u>6723 Weaver Road, Suite 108, Rockford, Illinois 61114</u>.

It is simply inexplicable as to why a legitimate judgment creditor would make payments to judgment debtors, their lawyers, their wives, [and have the same person signing its checks as the person signing their judgment debtors']. Wildcat and the Judgment Debtors are clearly "all in the family" and, as set forth below, are attempting to use the Agreed Order to shield the assets of the Judgment Debtors from legitimate creditors.

    **iv.**    **First Midwest Obtains Judgments Against Weber and Swenson.**

On February 28, 2014, *prior to the entry of the Agreed Order*, First Midwest initiated two breach of guaranty lawsuits against Weber and Swenson, respectively, in Illinois state court. These breach of guaranty actions arose out of a loan extended by First Midwest to an entity controlled by the Judgment Debtors called KM Homewood LLC ("<u>KM Homewood</u>"). KM Homewood used the loan proceeds provided by First Midwest to acquire a commercial retail property in Homewood, Illinois. Weber and Swenson guaranteed this loan. The loan was not paid back upon its maturity, and as a result, First Midwest brought suit to enforce Weber's and Swenson's guaranties and obtained judgments against both. In March 2015, relying on the Weber Judgment and Swenson Judgment, First Midwest issued citations to discover assets to Weber and Swenson, thus initiating their state court citation proceedings.

### v. The Receiver is Appointed; Obtains Judgment against Rubloff.

In addition to its breach of guaranty actions, First Midwest also filed a state court action to foreclose a mortgage on the commercial property (the "Retail Center") granted by KM Homewood in connection with the loan deal. To protect the Retail Center, First Midwest moved to appoint a receiver in the foreclosure action. The foreclosure court granted First Midwest's motion and appointed the Receiver on July 23, 2014. A copy of the foreclosure court's order appointing the Receiver is attached hereto as **Exhibit M**.

At the time of the Receiver's appointment, Rubloff was a tenant at the Retail Center. Rubloff, however, failed to honor its payment obligations under its lease of the space, which resulted in the Receiver initiating a forcible entry and detainer action against Rubloff in state court. On June 18, 2015, in the forcible entry and detainer suit, the Circuit Court of Cook County, Illinois, entered judgment against Rubloff and in favor of the Receiver in the amount of $674,446.19 (the "Rubloff Judgment"). A true and correct copy of the Rubloff Judgment is attached hereto as **Exhibit N**.

On July 30, 2015, in order to enforce and collect on the Rubloff Judgment, the Receiver issued a citation to discover assets to Rubloff. The Receiver's other collection efforts include: registering the Rubloff Judgment in Winnebago and DeKalb Counties, serving third party citations on Wildcat, Rubloff K-M, LLC and Stillman Bank, N.A. (one of the Judgment Debtors' banks), and issuing subpoenas out of its State Court Citation Proceeding to Wildcat, Stillman Bank N.A., National Bancorp, Inc. d/b/a American Midwest Bank and Rubloff K-M, LLC.

### vi. Wildcat Attempts to Obstruct the Receiver's Citation Efforts.

After intervening in the State Court Citation Proceedings, on September 10, 2015, Wildcat filed a Motion to Determine Lien Priority. In its motion, Wildcat argues that, pursuant

to the Agreed Order, the liens imposed by the Wildcat Citations over Rubloff's assets are valid, enforceable, and superior to the Receiver's citation lien over these same assets.

On October 2, 2015, the Receiver filed a motion seeking Judge Walker's authority to intervene in this case (the "Motion for Authority"). On October 26, 2015, the motion was granted. A copy of Judge Walker's Order is attached hereto as **Exhibit O**.

Adjudication of Wildcat's Motion to Determine Lien Priority was stayed on the motion of the Receiver pending resolution of Motion for Authority. The Receiver, based on comments from the judge in the State Court Citation Proceedings, believes the adjudication of Wildcat's Motion to Determine Lien Priority will be stayed pending resolution of the Receiver's efforts in this Court.

Thus, at this juncture, Wildcat's and the Judgment Debtors' scheme has regrettably succeeded: the Agreed Order, between the Judgment Debtors and Wildcat (an instrumentality of the Judgment Debtors), serves to indefinitely inhibit all creditors' ability to reach the Judgment Debtors' assets.

## Legal Standard

Rule 24(a)(2) of the Federal Rules of Civil Procedure requires that this Court permit anyone who meets the requirements of the Rule to intervene. The Seventh Circuit holds that interveners under this Rule must satisfy four requirements:

1. The intervener must timely move to intervene;

2. The intervener "must claim an interest relating to the property or transaction which is the subject of the action";

3. The intervener "must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and

    4.    "[E]xisting parties must not be adequate representatives of the [intervener]'s interest."

*Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003) (quoting *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000)).

## Argument

This Court should grant the subject Motion to Intervene pursuant to Rule 24(a)(2) because the Receiver must be allowed to challenge the validity and extent of the citation lien purportedly granted by the Agreed Order. Without such relief, Wildcat and the Judgment Debtors will continue to use the Agreed Order as a shield against the Judgment Debtors' legitimate creditors, including the Receiver. The Receiver can easily satisfy the four prongs set forth in *Heartwood*. Each is discussed in turn below.

### I. The Motion Is Timely; the Receiver Recently Learned that this Action Affected Their Interests.

The first requirement under Rule 24(a)(2) is that applicants timely file a motion to intervene in the action. *Heartwood*, 316 F.3d at 700. "The relevant inquiry in determining timeliness, however, is not on the time between the settlement and the motion to intervene, but instead is on the time between [the intervener]'s knowledge that the suit could impact their interests and the motion to intervene." *Id.* at 701. "A prospective intervener must move promptly to intervene as soon as it knows or has reason to know that its interest might be adversely affected by the outcome of the litigation." *Id.* Courts consider the following four factors in determining the timeliness of a motion to intervene:

1. "[T]he length of time the intervener knew or should have known of his interest in the case";

2. "[T]he prejudice caused to the original parties by the delay";

3. "[T]he prejudice to the intervener if the motion is denied"; and

    4. "[A]ny other unusual circumstances."

*Heartwood*, 316 F.3d at 701 (citing *Sokaogon*, 214 F.3d at 949).

In this case, the Receiver timely filed this Motion after it was clear the Agreed Order entered in this case was hindering his efforts to collect on his judgment and he obtained documents evidencing that Wildcat and the Judgment Debtors were one and the same. Wildcat only just filed their lien priority motion on September 10, 2015. The Receiver's Motion for Authority was filed shortly thereafter. This Motion was then filed within days of the Motion for Authority being granted.[5]

The other factors also weigh in the Receiver's favor. To the extent there was any delay, which there was not, the Motion does not prejudice Wildcat or the Judgment Debtors. Neither Wildcat nor the Judgment Debtors have taken any action during the time between the filing of Wildcat's lien priority motion and the filing of this Motion. In fact, Wildcat's inaction and collusion with the Judgment Debtors is the entire point of this Motion. Conversely, if the Motion is denied, the Receiver will suffer extreme prejudice because he may have no other means to challenge the validity and extent of the citation lien purportedly granted by the Agreed Order. Finally, Wildcat's payments to and for the benefit of the Judgment Debtors are certainly unusual and warrant intervention in this case.

**II.**    **The Receiver Has an Interest in the Judgment Debtors' Assets, Which Are Alleged by Wildcat to be Currently Encumbered by the Liens Imposed by the Wildcat Citations.**

To satisfy the second aspect of the intervention analysis, the intervener "must claim an interest relating to the property or transaction which is the subject of the action." *Heartwood*, 316

---

[5] On August 14, 2015, the Receiver received documents from Stillman Bank, N.A. pursuant to their third party subpoena. These documents form the current basis for many of the Receiver's allegations set forth herein.

10

F.3d at 700. In evaluating this requirement, courts focus "on the issues to be resolved by the litigation and whether the potential intervener has an interest in those issues." *Hanover Ins. Co. v. L & K Dev.*, No. 12 C 6617, 2013 WL 1283823, at *2 (N.D. Ill. Mar. 25, 2013) (quoting *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995)). The interest must be "direct, significant [and] legally protectable." *Hanover Ins.*, 2013 WL 1283823 at *2 (quoting *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995)). Whether intervener has such an interest is a "highly fact-specific determination." *Hanover Ins.*, 2013 WL 1283823 at *2 (quoting *Security Ins.*, 69 F.3d at 1381.).

In this case, the Receiver's citation issued to Rubloff create liens encumbering all of the Rubloff's assets. The Agreed Order entered in this case also purports to create a lien on all of the Judgment Debtors' assets, including Rubloff's assets. These competing lien interests are direct and significant. Additionally, the Receiver's lien interests are legally protectable, and therefore, satisfy the second prong of the intervention analysis.

**III. The Agreed Order Impedes the Receiver's Ability to Pursue His Lien Interests in Rubloff's Assets.**

The third prong of the intervention analysis mandates that the intervener "must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." *Heartwood*, 316 F.3d at 700. "Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervener in a subsequent proceeding." *Hanover Ins.*, 2013 WL 1283823 at *2 (quoting *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994)).

Wildcat's and the Judgment Debtors' improper use of the Agreed Order as a shield against all legitimate creditors is contingent on the Agreed Order's continued enforcement. Put simply, the Receiver's rights are currently impaired by the Agreed Order and if this Court does

11

not adjudicate the continuing validity and extent of Wildcat's asserted citation lien pursuant to the Agreed Order, the Receiver's ability to satisfy his judgment would be practically foreclosed. Conversely, if the Agreed Order is vacated or amended to end the citation lien, the Judgment Debtors' assets become unencumbered and available to the Receiver. The disposition of the Receiver's subsequent motion will either enable or foreclose the Receiver's ability to realize returns on his citation liens over the Judgment Debtors' assets. Therefore, the third intervention prong is satisfied.

**IV.     None of the Existing Parties Are Adequate Representatives of the Receiver's Interests.**

Finally, to successfully intervene, the movant must show that the "existing parties must not be adequate representatives of the [intervener]'s interest." *Heartwood*, 316 F.3d at 700. Neither Wildcat nor the Judgment Debtors adequately represent the Receiver's interests. Rather, Wildcat's and the Judgment Debtors' intentions run entirely against the interests of the Receiver. Here, the Receiver is an express adversary of Wildcat and the Judgment Debtors. With respect to Rubloff, the Receiver is a judgment creditor. With respect to Wildcat, the Receiver is a competing lien creditor. Additionally, as set forth above, Wildcat and the Judgment Debtors had the Agreed Order entered to shield the Judgment Debtors from creditors and continue to specifically obstruct the Receiver's ability to collect on his judgment against Rubloff. Neither Wildcat nor Rubloff desire the Receiver's collection efforts to generate proceeds. Conversely, the Receiver seeks the exact opposite outcome, and no existing party to this case represents or protects said interests – only the converse interests are represented herein. The final prong of the intervention analysis is thus satisfied.

**Conclusion**

Instead of simply settling with PNC on the debt underlying the PNC Judgment, the Judgment Debtors created Wildcat to purchase the PNC Judgment and are now wrongfully using it as a shield. This scheme should not be tolerated by this Court, the Receiver seeks to intervene accordingly. The facts and arguments presented in this memorandum establish that all of the requisite circumstances are present to justify the sought intervention. Accordingly, the Receiver respectfully requests that this Court grant his Motion to Intervene.

Dated: October 30, 2015

                                      **SANDOR MARK JACOBSON, NOT INDIVIDUALLY, BUT SOLELY AS THE COURT APPOINTED RECEIVER**

                                      By: /s/ Ryan T. Schultz
                                            One of His Attorneys

Kelly Smith-Haley
Ryan Schultz
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Tel. (312) 224-1200