```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


WILDCAT ENTERPRISES, LLC,    )
                             )
          Plaintiff,         )
                             )
     v.                      )   No. 11 C 4922
                             )
GERALD H. WEBER JR., et      )
al.,                         )
                             )
          Defendants.        )
```

## MEMORANDUM OPINION AND ORDER

First Midwest Bank ("First Midwest") and Sandor Mark Jacobson, a court-appointed receiver in a state court action against the defendants in this case ("the Receiver"), seek to intervene in this action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. First Midwest and the Receiver (together, "the movants") make troubling allegations about the conduct of the parties to this suit. Specifically, they claim to have discovered information indicating that a turnover order previously entered in this action was procured by a scheme of collusion between plaintiff Wildcat Capital Enterprises, LLC ("Wildcat") and defendants Gerald H. Weber Jr. ("Weber"), Ronald E. Swenson ("Swenson"), and Rubloff Development Group ("RDG") (Weber, Swenson, and RDG together, "the Judgment Debtors"). For

the reasons discussed below, the motions to intervene are granted.

## I. Background

To properly consider whether the movants are entitled to intervene, it is necessary to review the case's procedural history and its relationship to certain state court proceedings initiated by the movants against the Judgment Debtors.

**A.   The Instant Litigation: PNC Equipment Finance, LLC's Suit Against the Judgment Debtors**

On July 21, 2011, PNC Equipment Finance, LLC ("PNC") filed the instant action against the Judgment Debtors. PNC's complaint alleged that the Judgment Debtors had defaulted on a loan they had received from PNC. On March 13, 2012, I granted the parties' motion for entry of a consent judgment in favor of PNC in the amount of $25,546,359.87 (the "PNC Judgment"). Within a matter of days, the Judgment Debtors filed a motion to vacate the order, *see* Doc. No. 72, which I denied, *see* Doc. No. 80.

From September 2012 to September 2013, PNC issued citations to the Judgment Debtors in an attempt to collect on its judgment. On November 11, 2013, however, PNC filed a Notice of Assignment of Judgment ("Notice of Assignment") in this Court, pursuant to which it assigned to Wildcat "all of its right, title, liens, encumbrances and interests in and to" the PNC Judgment, the Weber Citation, and the Swenson Citation. Notice

2

of Assignment (Doc. No. 85). In December 2013, ostensibly in continuation of PNC's post-judgment collection efforts, Wildcat issued citations to discover assets to the Judgment Debtors.[1]

In March 2014, however, Wildcat and Judgment Debtors jointly submitted an Agreed Turnover Order ("Turnover Order") to the Court. Pursuant to the Turnover Order, the Judgment Debtors agreed to transfer assets to Wildcat in exchange for a $500,000 credit against the PNC Judgment. Turnover Order (Doc. No. 93) ¶ D. The Turnover Order's final provision stated that "[t]he Citations shall remain in full force and effect pending further Order of Court." *Id*. ¶ E. I entered the Turnover Order on March 25, 2014.

**B. The Movants' State Court Suits Against the Judgment Debtors**

While these proceedings were taking place in this Court, First Midwest filed suits against each of the Judgment Debtors in Illinois state court. These suits arose in connection with a loan made by First Midwest to KM Homewood LLC ("KM Homewood"), an entity controlled by the Judgment Debtors, which was used to purchase a commercial retail property in Homewood, Illinois ("the Retail Center"). On February 28, 2014, after KM Homewood

---

[1] PNC's complaint listed as defendants several other Rubloff entities in addition to RDG, including Rubloff Jet Express, LLC; Rubloff 757-MSN24794, LLC; Rubloff 251 JS, LLC; Rubloff/Ryan 80, LLC; Rubloff Aerospace, LLC; Rubloff Ryan, LLC; and Ryan 767, LLC. *See* Am. Compl. (Doc. 16) ¶ 1. However, the Turnover Order mentions only RDG, Rubloff Jet Express, LLC and Rubloff 251 JS, LLC.

had defaulted on the loan, First Midwest brought separate breach of guaranty lawsuits against Weber and Swenson. First Midwest prevailed in both actions. On September 29, 2014, a court sitting in Winnebago County, Illinois entered judgment against Weber in the amount of $3,107,075.04 (the "Weber Judgment"); and on November 12, 2014, a second court, sitting in Boone County, Illinois, entered judgment against Swenson for the same amount (the "Swenson Judgment").

In addition to the breach of guaranty suits, First Midwest filed an action to foreclose the mortgage on the Retail Center purchased with the loan proceeds. On July 23, 2014, the Receiver was appointed in the foreclosure action. At that time, RDG was a tenant at the Retail Center. Because RDG failed to make payments under the lease agreement, the Receiver brought a forcible entry and detainer action against it in the Circuit Court of Cook County, Illinois. On June 18, 2015, the court entered judgment for the Receiver against RDG in the amount of $674,446.19 (the "RDG Judgment").

**D. Wildcat's Intervention in the State Court Citation Proceedings**

In March 2015, following the Swenson and Weber Judgments, First Midwest served citations to discover assets upon Weber and Swenson. Likewise, on July 30, 2015, the Receiver issued a citation to discover assets upon RDG. Wildcat intervened in all

4

three actions, arguing that, pursuant to the final clause of the Turnover Order entered in this case, Wildcat's citations continued in perpetuity and that its claims to the Judgment Debtors' assets were therefore superior to First Midwest's and the Receiver's. On July 24, 2015, the court in the Swenson action issued an opinion stating that Wildcat's "petition to intervene should be granted and Wildcat determined to have a valid earlier in time lien than First Midwest." Wildcat Sur-Reply (Doc. No. 120) Ex. D. It appears that the court in the Weber action issued a similar ruling on November 20, 2015. *See* Wildcat Sur-Reply (Doc. No. 120) Ex. A. As for the foreclosure action, the Receiver sought authority from the state court to file a motion to intervene in the proceedings in this Court. On October 26, 2015, the state court granted the Receiver's motion, and adjudication of Wildcat's motion to determine lien priority was stayed. Wildcat's Sur-Reply (Doc. No 120) Ex. C.[2]

### E. The Movants' Allegations

The movants claim that, in the course of their respective state court citation proceedings against the Judgment Debtors, they discovered evidence indicating that Wildcat was an entity created by the Judgment Debtors. Specifically, the movants cite

---

[2] The Receiver states that, "based on comments from the judge in the State Court Citation Proceedings, [he] believes the adjudication of Wildcat's Motion to Determine Lien Priority will be stayed pending resolution of the Receiver's efforts in this Court." Memorandum of Law in Support Sandor Jacobson's (As Receiver) Joint Rule 24 Motion to Intervene ("Receiver's Mem.") at 8.

5

evidence suggesting that Wildcat is funding the Judgment Debtors' legal defense; that Wildcat is managed and controlled by an RDG executive and insider; that Wildcat and RDG commingle their assets; that checks issued by RDG and Wildcat have the same signatory; and that Wildcat and RDG operate out of the same office.

Furthermore, the movants allege that Wildcat has made no serious effort to collect on the judgment against the Judgment Debtors. Rather, the movants claim that, through Wildcat, the Judgment Debtors are using the Turnover Order to effectively force creditors such as First Midwest and the Receiver to the back of what amounts to an interminable waiting line. The movants further assert that insofar as Wildcat has actually collected on the PNC Judgment, the money has simply been funneled back to the Judgment Debtors.

## II. Discussion

Rule 24(a) of the Federal Rules of Civil Procedure provides:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

6

In ruling on a motion to intervene, courts "must accept as true the non-conclusory allegations of the motion." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995). A motion to intervene should not be denied "unless it appears to a certainty that the intervenor is not entitled to relief[.]" *Lake Inv'rs Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983).

**A. Rule 24(a)**

As Rule 24(a)'s text indicates, a party seeking to intervene as of right must satisfy four requirements: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). The burden is on the prospective intervenor to show that all four criteria are met. *Id*. I conclude that the movants have met that burden here.[3]

---

[3] As discussed below, the movants seek to intervene in these proceedings in order to bring a motion to terminate Wildcat's citation proceedings pursuant to Illinois Supreme Court Rule 277(f). Under Federal Rule of Civil Procedure 69, supplementary proceedings that aid the enforcement of a judgment are to be carried out in accordance with the law of the forum state. *See, e.g., United States ex. rel. McCandliss v. Sekendur*, No. 03 CV 807, 2014 WL 1018330, at *3 (N.D. Ill. Jan. 27, 2014) *aff'd sub nom. U.S. ex rel. McCandliss v. Sekendur*, No. 14-2298, 2015 WL 6839451 (7th Cir. Nov. 9, 2015). In Illinois, citations to discover assets are governed by Illinois Supreme Court Rule 277. *Id.*

7

### 1. Timeliness

The Seventh Circuit has identified several factors to be considered when deciding whether a motion to intervene has been timely filed: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (quotation marks omitted). Ultimately, the timeliness inquiry is a matter of reasonableness. *See, e.g.*, *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995) ("The timeliness factor is essentially a reasonableness inquiry, requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly."). Accordingly, determinations regarding the timeliness of Rule 24(a) motions are committed to the sound discretion of the district court. *See, e.g.*, *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994).

First Midwest's and the Receiver's motions to intervene are timely. It is true that the Turnover Order that the movants seek to challenge was entered on March 24, 2014. For purposes

of Rule 24(a)'s timeliness inquiry, however, the relevant question is when the "potential intervenors learn that their interest might be impaired." *Reich,* 64 F.3d at 321 (noting that petitions to intervene were deemed timely in *United States v. City of Chicago,* 870 F.2d 1256 (7th Cir. 1989), where the consent decree at issue was ordered eight years earlier, and in *South v. Rowe*, 759 F.2d 610 (7th Cir. 1985), where the decree had been in effect for two years); *see also Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994) (the mere passage of time is not the chief consideration in determining timeliness of Rule 24(a) motions).

Here, First Midwest avers that it was unaware that its rights were implicated by the Turnover Order until July 25, 2015 -- the date on which the judge in the Swenson action ruled that the Turnover Order extended Wildcat's citations indefinitely. *See* Joint Reply Br. at 3. Prior to that time, First Midwest states that it believed that Wildcat's citations had automatically expired in accordance with Illinois Supreme Court Rule 277, which generally imposes a six-month time limit for citations issued in supplementary proceedings. Ill. Sup. Ct. R. 277(f)("A proceeding under this rule . . . terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent

9

process issued to enforce the citation, whichever is sooner"). First Midwest filed its motion to intervene roughly ten weeks later, on September 30, 2015.

Similarly, the Receiver became of Wildcat's lien only in September 2015, when Wildcat intervened in the state court citation proceeding against RDG. After learning of Wildcat's lien against the Judgment Debtors, the Receiver sought authority from the judge in the foreclosure action to seek intervention in the proceedings in this case. Reply at 4. The Receiver's request was granted on October 26, 2015, and he filed his motion to intervene on October 30, 2015. First Midwest and Receiver both acted with reasonable dispatch once they became aware that their rights were implicated by the proceedings in this Court.

Moreover, permitting intervention at this juncture will not result in prejudice to Wildcat. Wildcat claims that allowing the movants to contest its collection efforts at this juncture would be unfair because "[t]here have not [sic] been, and there can be, no facts presented that would undermine the legitimacy of the Judgment entered in this proceeding in favor of PNC or the assignment of the Judgment to Wildcat." Wildcat Resp. to First Midwest's Motion to Intervene (Doc. No. 112) at 7. But this simply ignores the allegations in the motions to intervene, which, as already noted, I am required at this stage to accept as true. *See, e.g., Lake Inv'rs Dev. Grp., Inc.*, 715 F.2d at

1258 (7th Cir. 1983). On the other hand, the prejudice to the movants is potentially very grave if they are not permitted to intervene. Without an opportunity to challenge the Turnover Order, their judgments against the Judgment Debtors may well remain a dead letter.

Lastly, the element of "special circumstances" also comes into play here, and similarly favors the movants. The allegations forming the basis for the motions to intervene are very serious, and it is important that they be addressed regardless of how far the case has progressed.

For these reasons, I conclude that the movants satisfy Rule 24(a)'s timeliness requirement.

### 2. Interest Relating to the Subject Matter of the Action

Next, Rule 24(a) requires that prospective intervenors claim "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The Seventh Circuit has explained that the interest in question must be a "direct, significant, legally protectable" one. *See, e.g.*, *Reich*, 64 F.3d at 322.

As lien-holders and creditors of the Judgment Debtors -- and as putative victims of the parties' alleged fraudulent conduct -- the movants' interest here is "direct, significant, [and] legally protectable." Wildcat points to decisions stating

that the Rule 24(a) interest inquiry should "focus on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Id.* Wildcat argues that since the movants have no interest in the original underlying action between PNC and the Judgment Debtors, they are not entitled to intervene. I disagree. Courts have found the interest requirement met in other cases where prospective intervenors lacked an interest in the underlying action. Among the leading cases is *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980), an antitrust suit brought by the government against AT&T. During the course of the litigation, AT&T requested documents that the government had previously obtained from MCI. *Id*. at 1291. MCI sought to intervene pursuant to Rule 24(a), arguing that the documents were protected by the work product doctrine. *Id.* The district court denied the motion.

On appeal, the court addressed the question of whether MCI had an interest "relating to the property or transaction which is the subject of the action." *Id*. The court acknowledged that MCI had no interest in the action if "action" were understood to refer to the case as a whole. *Id.* But the court rejected such an interpretation, observing that "[i]f the term ['action'] encompasses collateral issues in the suit, which may constitute 'actions' in themselves, then MCI has an interest in the

property or transaction represented by the database documents, which are the subject of the limited discovery action in which MCI seeks to intervene." *Id*. Explaining the need for such a flexible approach to the Rule 24(b) interest inquiry, the court observed that to bar "intervention for collateral discovery issues merely because they do not concern the subject matter of the overall action would in many cases defeat the general purpose of intervention." *Id*. at 1292. Accordingly, the court reversed the district court's denial of MCI's motion to intervene. *Id*. at 1302.

Like the court in *United States v. ATT*, the Seventh Circuit has cautioned against a rigid construction of Rule 24, *see, e.g.*, *Jessup v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000), and has underscored that the term "interest" should be construed broadly, *see, e.g.*, *Lake Inv'rs Dev. Grp., Inc.*, 715 F.2d at 1259 ("The Supreme Court has embraced a broad definition of the requisite interest" for purposes of Rule 24(a)); *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203-04 (7th Cir. 1982). In view of these considerations, and taking into account the particular facts and allegations of the case, I am persuaded by the reasoning of *United States v. AT&T* and find it applicable here. While the movants may not have an interest in the underlying case between PNC and the Judgment Debtors, the

13

interest they assert here is nonetheless sufficient for the limited purposes for which they seek to intervene.

### 3. Potential Impairment Absent Intervention

Rule 24(a) requires prospective intervenors to show that their interests would be impaired if they are not allowed to intervene. For purposes of Rule 24(a), "[i]mpairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." *Shea*, 19 F.3d at 347 (citations omitted). If the allegations in the motions to intervene are true, there can be little question that the movants' interests will be impaired if they are not permitted to intervene in this action. In light of Wildcat's use of the Turnover Order in the state court proceedings, the movants will be unable to enforce their judgments against the Judgment Debtors.

### 4. Adequate Representation

Finally, a party seeking intervention as of right must show that the parties to the litigation fail to adequately represent its interests. *See, e.g.*, *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007). Prospective intervenors need "only make a showing that the representation 'may be' inadequate and the burden of making that showing should be treated as minimal." *Id.* at 774 (citation and quotation marks omitted).

Wildcat argues that its objectives are the same as the movants' -- "to maximize the financial recovery upon their respective judgments against the same parties." Wildcat Resp. Br. at 11.

In light of the movants' allegations, this argument is simply preposterous. If Wildcat is indeed a sham entity specifically designed to shield the Judgment Debtors from creditors such as First Midwest and the Receiver, Wildcat can hardly represent the movants' interests. *See, e.g., Central States, Southeast and Southwest Areas Health & Welfare Fund v. Old Security Life Ins. Co.*, 600 F.2d 671, 680 (7th Cir. 1979) ("Factual allegations reflecting collusion between original representatives and a party, and reflecting control over substituted representatives in the hands of those original representatives, are sufficient in this case to indicate an inadequacy of representation.").

For these reasons, I conclude that the movants here have satisfied all of Rule 24(a)'s requirements.

### B. Rule 24(c)

In addition to their arguments regarding Rule 24(a)'s requirements, Wildcat argues that the intervenors' motions should be denied because they failed to comply with Rule 24(c), which provides that a motion for intervention "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). As

15

Wildcat correctly points out, neither of the parties' motions to intervene was accompanied by a pleading. However, courts have routinely declined to dismiss motions to intervene based on mere technical violations of Rule 24(c), particularly where the prospective intervenors cure the defect by submitting a pleading in reasonably short order. *See, e.g.*, *Nat'l Cas. Co. v. Davis*, No. 91 C 01318, 1991 WL 101648, at *1 (N.D. Ill. June 3, 1991) ("Where the necessary pleading is filed soon after the motion, and there is no prejudice to the other parties, a strictly textual interpretation of the rule is unwarranted.") *see also* 10 James W.M. Moore et al., Moore's Federal Practice—Civil § 24.20 (3d ed. 2015) ("Courts have . . . disregarded purely formal defects in motions to intervene in the absence of prejudice to the parties caused by such defects.").

The movants have attached to their reply brief a Joint Motion to Terminate Citation Proceedings Pursuant to Ill. Sup. Ct. R. 277(f) and First Midwest Bank's Motion, Brought in the Alternative, to Vacate Pursuant to FRCP 60(d) ("Motion to Terminate"). *See* Ex. A to Movants' Reply Br. By so doing, they have sufficiently complied with Rule 24(c).[4]

---

[4] Although Wildcat takes issue with the movants' compliance with Rule 24(c) in other respects, it does not dispute that the Motion to Vacate constitutes a "pleading" for purposes of Rule 24(c). Courts addressing the issue have held that submission of a motion instead of a complaint or other pleading is indeed sufficient. *See, e.g.*, *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985) (failure to file a pleading in

**C. Other Contentions**

In addition to the foregoing arguments, a variety of other purported reasons for denying the motions to intervene can be found throughout Wildcat's briefs. For example, Wildcat maintains that the motions should be denied because they contain allegations of fraud but fail to comply with Rule 9(b)'s heightened pleading requirements. I am unpersuaded. As an initial matter, Wildcat cites no case authority, and I have found none, for the proposition that motions to intervene must comply with Rule 9(b). Indeed, to the extent that courts have spoken to this issue at all, they have taken the contrary view. *See, e.g.*, *Cabrini-Green Local Advisory Council v. Chicago Hous. Auth.*, No. 13 CV 3642, 2014 WL 683710, at *6 (N.D. Ill. Feb. 21, 2014) ("We reiterate here that intervention has a liberal pleading standard. . . . As such, courts have allowed proposed intervenors to stray from the strict pleading standards required for other federal pleadings.") (citations, quotation marks, and brackets omitted); *see also W. Point Underwriters, LLC v. Aleritas Capital Corp.*, No. 12-0205-JTM, 2012 WL 4049807, at *3 (D. Kan. Sept. 13, 2012) ("[A] Motion to Intervene need not spell out its claims with the level of particularity required

---

the nature of a complaint as required by Rule 24(c) was inconsequential).

for other pleadings; it is sufficient for present purposes that it demonstrates jurisdiction, standing, and satisfies the requirements of Rule 24(a).").

Wildcat also claims that the motions to intervene are barred by collateral estoppel. This argument is highly dubious on its face, but I need not reach its merits because it is made only in Wildcat's sur-reply and is not sufficiently developed. Wildcat fails even to list the elements of collateral estoppel, much less discuss their application to the proceedings at issue here. The argument is therefore forfeited. *See, e.g.*, *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]").

Lastly, Wildcat argues that intervention should be denied because the intervenors' proposed Motion to Terminate has no likelihood of success on the merits. Among other things, Wildcat contends that the motion is untimely insofar as the movants seek relief under Rule 60. As to the relief sought under Illinois Supreme Court Rule 277, Wildcat asserts that its "Citation and its lien has already been extended. It is a fully

adjudicated matter and the [movants] lack standing to terminate." Sur-Reply at 12.

These arguments are premature. As many courts have held, "[a]n application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) (citing *Oneida Indian Nation v. New York,* 732 F.2d 261, 265 (2d Cir. 1984)); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Old Sec. Life Ins. Co.*, 600 F.2d 671, 679 (7th Cir. 1979); *Black & Veatch Corp. v. Modesto Irr. Dist.*, No. 1:11-CV-00695-LJO, 2011 WL 4842319, at *14 (E.D. Cal. Oct. 12, 2011). Despite Wildcat's protestations to the contrary, the movants' claims and allegations are not facially frivolous and thus afford no basis for rejecting their motion to intervene.

**D. Scope of Intervention**

In the Motion to Terminate submitted in connection with their motion to intervene, the movants state that they "reserve the right to supplement this Motion and any supporting memoranda with additional theories[.]" Motion to Terminate at 1 n.1. I wish to clarify, however, that the scope of the intervention granted here is strictly limited to questions concerning Illinois Supreme Court Rule 277 and Federal Rule 60 as they

apply to this case. *See* Fed. R. Civ. P. 24(a) Advisory Committee's Note on 1966 Amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

### III. Conclusion

For the foregoing reasons, First Midwest's and the Receiver's motions to intervene are granted for the limited purpose of litigating their Motion to Terminate. The parties are to meet and confer to determine the scope of additional discovery, if any, to be taken, and to propose a briefing schedule within thirty days of the date of this order.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: March 4, 2016